IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br> )<br>       **Plaintiff,** )<br> )<br>vs. )<br> )<br>**KEVIN H. ALFORD,** )<br> )<br>       **Defendant.** ) | 8:06CR407<br><br>**REPORT AND<br>RECOMMENDATION** |

This matter is before the court on the defendant's MOTION TO SUPPRESS [9]. An evidentiary hearing was held on February 27, 2007, the transcript of which was filed on March 14, 2007 [22]. The defendant's post-hearing brief [23] was filed on March 23, 2007, at which time the motion was deemed submitted.

The defendant moves to suppress all evidence seized and statements made as the result of the execution of a search warrant for his residence at 4314 Lake Street, Omaha, Nebraska.[1] Defendant contends that there was not probable cause for the county court judge to issue the warrant. The government contends the search warrant was issued on probable cause. For the reasons discussed herein, I recommend that the motion be denied.

---

[1] Although other issues were initially raised in the motion, counsel agreed on the record that the issues to be decided by the court are limited to the sufficiency of the officers' affidavit, the validity of the search warrant and the process of its issuance. (Filing 22 at 2:20-3:16). Therefore, the other issues raised in the defendant's post-hearing brief are deemed withdrawn and will not be discussed in this Report and Recommendation.

## FACTUAL BACKGROUND

Omaha Police Officer Dan Williams testified that he has worked for the Omaha Police Department for 14 years. For the past two years, Williams has been assigned to the gang suppression unit, investigating gang-related crimes and conducting street-level narcotics investigations. For the previous 18 months, he was assigned to the criminal investigations bureau. During the course of these assignments, Williams has applied for and obtained search warrants from Douglas County judges.

On October 17, 2006, Officer Williams and Officer Mark Noonan prepared an affidavit and application (Exhibit 1) for a search warrant for the residence at 4314 Lake Street. Williams and Noonan appeared before County Judge Lyn White and presented the documents to her for issuance of the search warrant. The application (Exhibit 1) presented to Judge White states:

> The complaint and affidavit of Omaha Nebraska Police Officers Mark NOONAN #1402 and Dan WILLIAMS #1306 on this 17th day of October 2006, who, being first duly sworn, upon oath says:
>
> That the Affiants have just and reasonable grounds to believe, and do believe, that there is concealed or kept as hereinafter described, the following property, to-wit: Cocaine (crack), its derivatives and administering instruments, whether homemade or manufactured, and possession of which is illegal per Nebraska State Statutes. All monies, records and weapons used to conduct an illegal narcotics operation. Venue items identifying those parties in control of or residing at 4314 Lake Street, Omaha, Douglas County, Nebraska.
>
> That said property is concealed or kept in, on, or about the following described place or person, to-wit: 4314 Lake Street, Omaha, Douglas County, Nebraska, further described as a cream colored, stucco, one and one-half

story, single family dwelling with the numbers "4314" hanging from a sign directly above the front door; AND/OR the person of L/N/U, F/N/U, a/k/a Smoke, described as a black male, 5'11" tall, slender build and short hair and in his late 30s.

That said property is under the control or custody of: Affiant Officer WILLIAMS contacted a representative from Metropolitan Utilities District, who stated that Kevin ALFORD is the current subscriber for services at 4314 Lake Street.

That the following are the grounds for issuance of a search warrant for said property and the reasons for the Affiant's belief, to-wit:

On Tuesday, 10 April 2006, a narcotics Drug Activity Report[2] was generated, which indicated that there was a large amount of traffic to and from the address of 4314 Lake Street.

On Tuesday, 18 April 2006, a narcotics Drug Activity Report was generated, which indicated that the reporting party stated that he/she knew of an acquaintance who was buying drugs from 4314 Lake Street.

On Thursday, 18 May 2006, a narcotics Drug Activity Report was generated, which indicated the reporting party stated that she found out her boyfriend was buying crack from 4314 Lake Street. The caller indicated that the parties staying at the residence were black males.

Within the last two months of Tuesday, 17 October 2006, Affiant Officer NOONAN has received information from at least two separate concerned citizens that crack cocaine was being sold from 4314 Lake Street. Furthermore, these concerned citizens indicated that a party by the name of Kevin ALFORD, a/k/a Special K, was the primary individual involved in selling the crack cocaine from 4314 Lake Street.

Within 48 hours of Tuesday, 17 October 2006, Affiant Officers had the occasion to meet with a confidential, reliable informant, hereafter referred to

---

[2]According to Officer Williams, a narcotics Drug Activity Report is simply a complaint received from a member of the public. The majority of such complaints are anonymous. (10:10-17). Such complaints are assigned to specific officers for investigation. The assigned officers try to develop information as to whether there is narcotics activity taking place at that location. (12:2-7).

as the C/I.  The C/I stated he/she was aware of a party, known as Kevin, to be actively selling crack cocaine from the residence of 4314 Lake Street.  The C/I indicated within 48 hours of Tuesday, 17 October 2006, he/she had the occasion to be inside the address of 4314 Lake Street and observed several black male individuals inside, including a party known to him/her as "Kevin", whom the C/I identified as Kevin ALFORD by an Omaha Police Department photograph.  The C/I indicated that he/she observed the party known to him/her as L/N/U, F/N/U, a/k/a Smoke, described as a black male, 5'11" tall, slender build and short hair in his late 30s, in possession of a small quantity of crack cocaine.  The C/I indicated he/she observed Smoke accept U.S. currency from a customer in exchange for a small amount of crack cocaine.

The C/I further indicated that he/she has purchased crack cocaine from Kevin ALFORD at the address of 4314 Lake Street on several occasions and has seen Kevin ALFORD in possession of a firearm approximately two to three weeks ago.  During the course of the investigation, the C/I pointed out to Affiant Officers the address of 4314 Lake Street, which is the residence he/she observed the narcotics transaction.

The C/I has provided information to Affiant Officers which has proven to be both reliable and accurate.  The C/I has made controlled purchases of crack cocaine under the direct supervision of Affiant Officers.  These purchases of crack cocaine have field tested positive for cocaine.  The C/I is familiar with illegal narcotics and how they are packaged and sold.  The C/I is under no terms of parole, probation, or work release in the State of Nebraska.

That a nighttime search is requested because: NOT REQUESTED.

That a no-knock search warrant is requested because: Due to the small amounts of crack cocaine being sold from 4314 Lake Street, Affiant Officers know from past experience that if officers were to knock and announce their presence and purpose, the evidence being sought could easily be destroyed by flushing it down the toilet or by swallowing it.  If officers were required to knock & announce their presence, the presence of firearms in the address could pose a risk to officers and/or suspects.  Therefore, the use of no-knock search warrant affords officers with additional safety by the element of surprise.

-4-

Relying solely on the contents of this affidavit and application, Judge White issued a no-knock[3] warrant (Exhibit 2) on October 17, 2006, as requested. No federal officers were involved in preparing the search warrant affidavit or obtaining the search warrant.

Officer Williams assisted in serving the search warrant at 4314 Lake Street on October 18, 2006. He testified that he and other officers relied on the authority of the search warrant signed by Judge White in carrying out the search. Items of suspected contraband and other evidence were recovered from the residence and are listed on the Return and Inventory (Exhibit 3).

## LEGAL ANALYSIS

Defendant contends the search warrant is facially defective, and the county judge did not have probable cause to issue the search warrant, because the application did not specify the dates and times the C/I purchased crack cocaine or saw the defendant in possession of a firearm, and the search warrant application does not describe the firearm in question. He also challenges the reliability of the C/I[4] and complains the application contained stale information.

---

[3]The defendant's arguments that the officers' execution of the no-knock warrant violated federal knock-and-announce rules and constitutional rights have been deemed withdrawn.

[4]Under *Franks v. Delaware*, 438 U.S. 154, a defendant who alleges falsity or recklessness in a search warrant affidavit must make a substantial preliminary showing that a false statement was included in the affidavit (or that relevant information was omitted from it) intentionally or recklessly. The defendant did not ask for, and was not granted, a *Franks* hearing in this case. Thus, the truthfulness of the information contained in the search warrant application is not at issue.

### A.  Staleness

On the issue of staleness,

> A search warrant may only be issued upon a showing of probable cause that evidence or instrumentalities of a crime or contraband will be found in the place to be searched. *Walden v. Carmack,* 156 F.3d 861, 870 (8th Cir. 1998). A probable cause determination is made after considering the totality of the circumstances. *United States v. Hernandez Leon,* 379 F.3d 1024, 1027 (8th Cir. 2004) (citing *Illinois v. Gates,* 462 U.S. 213, 230, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). Probable cause must exist *at the time the search warrant is issued. United States v. Ozar,* 50 F.3d 1440, 1446 (8th Cir. 1995), *cert. denied,* 516 U.S. 871, 116 S. Ct. 193, 133 L. Ed. 2d 128 (1995). While a lapse of time between the observations of a witness and the issuance of a search warrant may render probable cause fatally stale, "[t]here is no bright-line test for determining when information is stale." *United States v. Maxim,* 55 F.3d 394, 397 (8th Cir.), *cert. denied,* 516 U.S. 903, 116 S. Ct. 265, 133 L. Ed. 2d 188 (1995). The passage of time is not necessarily the controlling factor in determining staleness, as other factors, such as "the nature of the criminal activity involved and the kind of property subject to the search," must be considered. *Id.* (quoting *United States v. Rugh,* 968 F.2d 750, 754 (8th Cir. 1992)).

*United States v. Gettel*, 474 F.3d 1081, 1086 (8th Cir. 2007).

"The passage of time between the transactions on which a warrant is based and the ensuing search is less significant when the facts recited indicate activity of a continuous nature." *United States v. Jones*, 801 F.2d 304, 314 (8th Cir. 1986); *see also United States v. Rugh*, 968 F.2d 750 (8th Cir. 1992); *United States v. Comeaux*, 955 F.2d 586 (8th Cir.), *cert. denied*, 506 U.S. 845, 506 U.S. 944 (1992); *United States v. Anderson*, 933 F.2d 612 (8th Cir. 1991). "'[N]arcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness.'" *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990). "In investigations of ongoing

narcotics operations, "intervals of weeks or months between the last described act and the application for a search warrant [does] not necessarily make the information stale."'" *United States v. Smith*, 266 F.3d 902, 905 (8th Cir. 2001).

In this case, the search warrant application reflects an investigation of reports and activities consistent with drug trafficking. These activities occurred regularly over a period of time, and the defendant's residence had been the object of numerous complaints of drug activity since at least April 2006. A confidential informant reported that "Kevin" was actively selling crack cocaine from the residence of 4314 Lake Street less than 48 hours before the search warrant application was prepared. Considering these factors, I find that the information in the search warrant application was not "stale" or irrelevant to the issue of probable cause.

### B.  Reliability of Confidential Informant

"The statements of a reliable confidential informant are themselves sufficient to support probable cause for a search warrant." *United States v. Wright*, 145 F.3d 972, 975 (8th Cir.), *cert. denied*, 525 U.S. 919 (1998); *see also United States v. Carpenter*, 341 F.3d 666, 669 (8th Cir. 2003) (same). "The reliability of a confidential informant can be established if the person has a history of providing law enforcement officers with truthful information." *Wright*, 145 F.3d at 975.

Here, the affidavit states the C/I was not on parole, probation, or work release in the State of Nebraska, that he/she was reliable, and that he/she had in the past provided

information which had proven to be both reliable and accurate. The C/I was familiar with illegal narcotics and how they are packaged and sold. In particular, this C/I previously made controlled purchases of crack cocaine under the direct supervision of the affiant officers, and those purchases field tested positive for cocaine. The C/I also purchased crack cocaine from the defendant at 4314 Lake Street on several occasions and saw the defendant in possession of a firearm approximately two to three weeks before the search warrant was issued. During the course of this investigation, the C/I pointed out the residence at 4314 Lake Street to Officers Noonan and Williams. Officer Williams verified that Kevin Alford was the current subscriber for utilities service at 4314 Lake Street.

While law enforcement did not independently verify every bit of information provided by the C/I, their partial corroboration is sufficient to establish probable cause in this case, considering that the C/I has a record of providing law enforcement with reliable information. *United States v. Gladney*, 48 F.3d 309, 315 (8th Cir. 1995). *Compare United States v. Brown*, 49 F.3d 1346, 1349 (8th Cir. 1995) ("where a previously unknown informant provides information, the informant's lack of a track record *requires* 'some independent verification' to establish the reliability of the information." (emphasis added)).

Under the totality of the circumstances, considering the C/I's record of reliability, and the corroboration by law enforcement, I conclude that the information received from the confidential informant was reliable and was sufficiently corroborated by law enforcement to be considered by the issuing judge in her determination as to probable cause.

### C. Existence of Probable Cause

The task of the issuing judge in determining whether probable cause exists to issue a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability" that evidence of a crime would be present. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). The duty of this court, as a reviewing court, is simply to "ensure that the magistrate or issuing judge had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). Great deference is afforded the issuing judge's determination of probable cause. *Illinois v. Gates*, 462 U.S. at 236.

When, as in this case, the issuing judge relied solely upon a supporting affidavit to issue a search warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause. *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005); *United States v. Wells*, 347 F.3d 280, 286 (8th Cir. 2003), *cert. denied*, 541 U.S. 1081 (2004).

I have reviewed this search warrant application in detail, giving deference to the issuing judge's determination of probable cause. Contrary to the defendant's assertions, the factual information contained in the search warrant application was not stale, and the information received from the C/I was adequately corroborated. It is quite clear why the

issuing judge believed there was a fair probability that evidence of a crime would be found at 4314 Lake Street.

### D.  *Leon* **Exception**

I also find that the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984), applies to this search warrant at issue. *See United States v. Scroggins*, 361 F.3d 1075, 1083 (8th Cir. 2004). In *Leon*, the Supreme Court recognized that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." 468 U.S. at 916. Accordingly, evidence obtained pursuant to a search warrant should not be excluded where the officers executed the warrant "with an objectively reasonable reliance on the magistrate's determination of probable cause." *United States v. Riedesel*, 987 F.2d 1383, 1391 (8th Cir. 1993).

The Court established four exceptions to the good faith exception: (1) when the judicial officer was misled by information in the affidavit that the affiant knew was false or included in the affidavit in reckless disregard of the truth; (2) where the issuing officer wholly abandoned the judicial role; (3) where the affidavit supporting the warrant contains so few indicia of probable cause as to render official belief in existence of probable cause "entirely unreasonable;" and (4) where the warrant itself was so facially deficient that no executing officer could reasonably presume it to be valid. *Leon*, 468 U.S. at 923.

Officer Williams testified that he and other officers relied on the authority of the search warrant signed by Judge White in carrying out this search. Given the facts of this

case, the officers' reliance on the search warrant was objectively reasonable. There is no evidence that the issuing judge abandoned her role, or that any warrant was based on an affidavit so lacking in probable cause as to make belief in it unreasonable. Nor has the defendant asserted any legal argument that the issuing judge was misled by false information included in the affidavit "in reckless disregard of the truth." Therefore, should the District Court find that the officers' affidavit did not establish probable cause to search, I find that the evidence is nevertheless admissible under the good faith exception of *Leon*.

## RECOMMENDATION

Because I find that the search warrant in question was issued upon probable cause, and, in the alternative, that the evidence should be admissible under the good faith exception of *United States v. Leon*,

**IT IS RECOMMENDED** that defendant's MOTION TO SUPPRESS [9] be denied in all respects.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten (10) business days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.

**DATED April 11, 2007.**

        **BY THE COURT:**

        **s/ F.A. Gossett**
        **United States Magistrate Judge**